FILED

2004 MAR -4  AM 10: 27

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## FT. MYERS DIVISION

|  |  |  |
|---|---|---|
| MICHAEL H. HAWKINS, Individually, | ) | |
| RUSSELL WAGGONER, Individually, | ) | |
| DON FEE, Individually, KEN HALL, | ) | |
| Individually, STEVE BANNON, | ) | |
| Individually, DAVID OTTO, Individually, | ) | |
| TOM G. AMON, Individually, EVERETT | ) | CASE NO.: 2:04-CV-95-FTM-29SPC |
| C. SETSER, Individually, TERRY | ) | |
| TURNER, Individually, DR. KENNETH | ) | |
| BADOLATO, Individually, DR. DAVID W. | ) | |
| BADOLATO, Individually, HARVEY | ) | |
| HENDLER, Individually, CINCO | ) | |
| HABANEROS, INC., a foreign corporation, | ) | |
| DIESPITER LTDA, a foreign corporation, | ) | |
| BOSTON MEDICAL INVESTORS, LLC, a | ) | |
| Nevada limited liability company, | ) | |
| SPARTACUS HEALTHCARE | ) | |
| PARTNERS IV, a Nevada corporation, | ) | |
| GAMI, LLC, a Florida limited liability | ) | |
| corporation, BIG GAMES HOLDINGS, | ) | |
| INC., a foreign corporation, and CROWN | ) | |
| IV HOLDINGS, INC., a foreign | ) | |
| corporation, | ) | |
|  | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| vs. | ) | |
|  | ) | |
|  | ) | |
| CHARLES FUST, Individually, STACEY | ) | |
| MALONEY FUST, Individually, ROBERT | ) | |
| DUPONT, Individually, RUSSELL R. LEE, | ) | |
| III, Individually, and SINO FRESH | ) | |
| HEALTHCARE, INC., a Florida | ) | |
| corporation, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |
|  | ) | |

## CLASS ACTION AMENDED COMPLAINT

Lead Plaintiffs, by and through their attorneys, as and for their Class Action Complaint, allege the following upon personal knowledge as to themselves and their acts, and as to other matters upon information and belief based upon, *inter alia*, the investigation made by and through their attorneys, including the review of the public filings of SINO FRESH HEALTHCARE, INC. (the "Company" or "SFHC") with the U.S. Securities & Exchange Commission ("SEC"), published reports and news articles, interviews with former employees of the company, reviews of the Asset Purchase Agreement ("APA") between Sino Fresh Laboratories, Inc., an Alabama corporation ("SF Labs") and "SFHC" and a review of court filings from prior lawsuits involving Defendant, RUSSELL R. LEE, III ("LEE").

## I. <u>THE PARTIES, JURISDICTION AND VENUE</u>

1.      This Court has subject matter jurisdiction over this matter in that it involves matters arising under the Securities laws of the United States.  Accordingly, pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this matter.

2.      Plaintiff, MICHAEL H. HAWKINS is a resident of the State of Florida and is a shareholder of SINO FRESH HEALTHCARE, INC. (the "Company" or "SHFC") and is otherwise *sui juris*

3.      Plaintiff, RUSSELL WAGGONER is a resident of Sarasota County, Florida and is a shareholder of SFHC and is otherwise *sui juris*.

4.      Plaintiff, RON FEE is a resident of Sarasota County, Florida and is a shareholder of SFHC and is otherwise *sui juris*.

5.      Plaintiff, KEN HALL is a resident of Sarasota County, Florida and is a shareholder of SFHC and is otherwise *sui juris*.

6.      Plaintiff, STEVE BANNON is a resident of Los Angeles County, California and is a shareholder of SFHC, an Independent Director of SFHC and a member of the Audit Committee of SFHC and is otherwise *sui juris*.

7.      Plaintiff, DAVID OTTO is a resident of Seattle, Washington and is a shareholder of SFHC, a Member of the Board of Directors of SFHC and a member of the Audit Committee of SFHC and is otherwise *sui juris*.

8.      Plaintiff, TOM G. AMON is a resident of New York, New York and is a shareholder of SFHC, and a former officer of SFHC and is otherwise *sui juris*.

9.      Plaintiff, EVERETT C. SETSER ("SETSER") is a resident of Volusia County, Florida and is a shareholder of SFHC, and is otherwise *sui juris*.

10.     Plaintiff, TERRY TURNER ("TURNER") is a resident of Fulton County, Florida and is a shareholder of SFHC, and is otherwise *sui juris*.

11.     Plaintiff, DR. KENNETH BADOLATO ("K. BADOLATO") is a resident of Sarasota County, Florida and is a shareholder of SFHC, and is otherwise *sui juris*.

12.     Plaintiff, DR. DAVID W. BADOLATO ("D. BADOLATO") is a resident of Sarasota County, Florida and is a shareholder of SFHC, and is otherwise *sui juris*.

13.     Plaintiff, HARVEY HENDLER, is a resident of Passaic, New Jersey and is shareholder of SFHC and is otherwise *sui juris*.

14.     Plaintiff, CINCO HABANEROS, INC., ("CHI") is a foreign corporation which is a shareholder of SFHC and is otherwise *sui juris*.

15.     Plaintiff, DIESPITER, LTDA ("DIESPITER") is a foreign corporation which is a shareholder of SFHC and is otherwise *sui juris*.

16.     Plaintiff, BOSTON MEDICAL INVESTORS, LLC ("BMI") is a Nevada limited liability company which is a shareholder of SFHC and is otherwise *sui juris.*

17.     Plaintiff, SPARTACUS HEALTHCARE PARTNERS IV ("SHP") is a Nevada corporation which is a shareholder of SFHC and is otherwise *sui juris.*

18.     Plaintiff, GAMI, LLC ("GAMI") is a Florida limited liability corporation located in Brevard County, Florida which is a shareholder of SFHC and is otherwise *sui juris.*

19.     Plaintiff, BIG GAMES HOLDINGS, INC. ("BIG GAMES") is a foreign corporation which is a shareholder of SFHC and is otherwise *sui juris.*

20.     Plaintiff, CROWN IV HOLDINGS, INC., is a foreign corporation which is a shareholder of SFHC and is otherwise *sui juris.*

21.     All Plaintiffs will be collectively referred to as "Lead Plaintiffs".

22.     Defendant, CHARLES FUST ("FUST") is a resident of Sarasota County, Florida and is the Chairman and CEO of SFHC and is otherwise *sui juris.*

23.     Defendant, STACEY MALONEY FUST ("MALONEY FUST") is a resident of Sarasota County, Florida, is a shareholder of SFHC and is a member of the Board of Directors of SFHC and is otherwise *sui juris.*

24.     Defendant, ROBERT DUPONT ("DUPONT") is a resident of Sarasota County, Florida, is a shareholder of SFHC and is a member of the Board of Directors of SFHC and is otherwise *sui juris.*

25.     Defendant, RUSSELL R. LEE, III ("LEE") is a resident of Sarasota County, Florida, is a shareholder of SFHC, and is the CFO of SFHC and is otherwise *sui juris.*

26.     Defendant, SINO FRESH HEALTHCARE, INC. ("SFHC") is a Florida corporation with its principal place of business in Sarasota County, Florida which has as its principal business the manufacturing, marketing, development and sale of sinus care products.

27.     Venue is appropriate in this jurisdiction as the acts complained of and set forth below took place in this jurisdiction, the acts and omissions by the Defendants took place in this jurisdiction, the acts of self-dealing took place in this jurisdiction and in Ft. Lauderdale, Florida. Monies were removed from the bank accounts of the Company in this jurisdiction. Acts of self-dealing occurred by the Inside Directors (as defined below) in this jurisdiction. The failure to disclose occurred by the filings with the SEC (via preparation of the 10Q) in this jurisdiction and the cover-up of actions of the Inside Directors occurred mainly in this jurisdiction. Obviously, however, to the extent that there are shareholders in other jurisdictions, the misrepresentations and/or omissions did obviously occur elsewhere as well.

## INTRODUCTION

28.     This is a Class Action for securities violations and other matters being brought by Lead Plaintiffs, on behalf of themselves and all persons as described below (the "Class"), other than Defendants and related parties, who purchased the publicly traded shares of SFHC, common stock between January 1, 2003 and February 19, 2004 (the last trading day before the Independent Directors requested the SEC to hold all trading because of material irregularities in SFHC's financial status and disclosures at issue in this case) inclusive (the "Class Period").

29.     Defendant, SFHC is a public company that, until recently, primarily manufactured, marketed and distributed "Sino Fresh" products in the United States. SFHC is principally controlled by Defendants, FUST, MALONEY FUST and DUPONT (the "Inside Directors").

30.    FUST is a scientist who developed and discovered the patents utilized by SFHC. FUST had a prior corporation by the name of Sino Fresh Labs, Inc. ("SF Labs"), which previously sold the product known as Sino Fresh, which product is now being manufactured, produced, distributed and marketed by SFHC.   However, FUST has always kept the foreign patents in his own name.

31.    In or about December, 2002, SF Labs executed with SFHC an Assert Purchase Agreement ("APA") to transfer and deliver all patents for Sino Fresh to SFHC, the Company, and to the other two (2) related SF Entities, Sino Fresh Healthcare Asia, Inc. ("SF Asia") and Sino Fresh Healthcare Europe, Inc. ("SF Europe").   Those representations were made to all three (3) SF Entities, their auditors and their shareholders, as well as to the SEC.   Those representations are contained in the closing documents of the APA as having been already effectuated.

32.    To date, despite all of those representations, all marketing materials and dissemination of those materials to the public, to the SFHC shareholders, to the news media and to third parties that the patents have been transferred, the foreign patents have still not yet been transferred by FUST.   In fact, up until February 9, 2004, those foreign patents still remained in FUST's name, despite repeated demands by a former officer and director of SFHC, Andrew Badolato and his consulting firm, Sargon Capital, Inc. ("Sargon"), that the patents be transferred.

33.    Sargon and Badolato brought these matters to the attention of the Independent Directors, STEVE BANNON ("BANNON") and DAVID OTTO ("OTTO") on February 9, 2004 by a letter written pursuant to F.S. § 607.1074(1)(2).   This letter was also sent to FUST, MALONEY FUST and DUPONT, the Inside Directors.   See the letter of February 9, 2004 attached hereto as Exhibit "A" and incorporated herein by reference.

34.   Badolato and Sargon had previously made this and other matters known to the Inside Directors on numerous occasions -- to no avail.  These matters included the following:

A.   FUST and the other Inside Directors have continued to act as if SFHC is FUST's personal company, despite it being a public traded NASDAQ/OTC BB company.  In fact, despite taking money from independent investors in this publicly traded company, FUST has continued to breach his fiduciary duty and act in a self-dealing manner as it relates to the Company, SFHC.

B.   FUST and the other Inside Directors of SFHC spent approximately $300,000.00 of SFHC's funds in fees, registration and licensing fees for the above-referenced patents to be registered internationally as well as for licensing and legal fees associated with same (the "foreign patent registrations") – during which time FUST maintained **individual ownership** of said foreign patents and repeatedly refused Badolato's and the independent consultant's, Sargon's, requests to turnover the foreign patents to the other two (2) SF entities, (SF Asia and SF Europe) – despite repeated promises by FUST to do so and the APA's requirements that he do so.  Other examples of self-dealing by the Inside Directors and violations of Sarbanes-Oxley are set forth below.

C.   SF Labs executed an Indemnification Agreement for various matters that it was obligated to pay to SFHC (the Company) as part of the closing documents and as part of the APA.  A copy of the APA is attached hereto and incorporated herein by reference as Composite Exhibit "B".  To date, SFHC has paid liabilities of SF Labs which were to be indemnified as part of the APA.  Those expenses include, but are not limited to, attorneys' fees involving two (2) different litigations, specifically the Cabral litigation in Alabama and the threatened Mullins

litigation (FUST's former girlfriend) – which two (2) litigations are estimated at approximately $100,000.00.  These are violations of and a breach of the APA.

        D.      In fact, the dispute with Mullins was resolved by FUST utilizing cash and stock in SFHC as payment to Mullins at the expense of SFHC's other shareholders.  This was not properly disclosed to shareholders and was not approved of by the Independent Directors of the Company, as required by Sarbanes-Oxley.

        E.      As the Chairman and CEO, and as an officer and director of SFHC, FUST purchased an engagement ring for MALONEY FUST with corporate funds of SFHC and attempted to cover up same.  This was ultimately uncovered by the former CFO of SFHC, Bruce Harmon ("Harmon") and brought to FUST's attention.  Shortly thereafter, Harmon was terminated.

        F.      Furthermore, LEE objected to the Independent Directors (who served as the Audit Committee), having direct oversight over the auditor and having the auditor report directly to the Audit Committee – which is a requirement of the Sarbanes-Oxley Act.  LEE demanded that the auditor report directly to him, an inside person – which is improper pursuant to Sarbanes-Oxley.

        G.      Furthermore, as an inside director, officer, CEO and chairman, FUST coerced execution of an Employment Agreement for MALONEY FUST, his former girlfriend and now wife of less than twelve (12) months.  MALONEY FUST had no college degree, no qualifications in the field and no prior relevant experience for the job at issue, which employment pays a salary and options of more than $350,000.00.  MALONEY FUST was also given a seat on the Board of Directors of SFHC, a publicly traded NASDAQ/OTC BB company.  This Employment Agreement was not approved with full disclosure to and approval of an

independent committee of the Board of Directors of SFHC.  This is a violation of Sarbanes Oxley.

H.     In addition, the Inside Directors allowed SFHC (and the two (2) other SF Entities) to lease space at a questionable building location for fifteen (15) years, not necessarily suitable for the business purpose of SFHC and/or for the industry in which it participates, at a building location which is equitably owned by FUST and DUPONT (through a corporate entity), without accurately and completely and/or fully disclosing this conflict of interest to the remaining Independent Directors of the Board and without having the remainder of the Board of the three (3) SF entities vote on the lease without input by FUST and/or DUPONT (i.e. – by a vote solely of Independent Directors) of the three (3) SF entities.  This is also a violation of Sarbanes-Oxley.

I.     The Inside Directors also failed to disclose to SFHC's Board of Directors that SF Labs, FUST's prior entity, entered into an agreement for a lease obligation in Ft. Lauderdale, Florida despite SF Labs having no operations at said location, which location had been utilized with FUST's direct knowledge as a "boiler room" "chop shop" for SF Labs to raise money through the sale of unregistered securities with unlicensed agents.  Unknown to the Independent Directors of SFHC, this procedure of paying the rent continued after the APA was executed by SFHC.  SFHC continued making those payments by and through FUST signing the checks, without the remainder of the Independent Directors' approval and/or knowledge – resulting in sanctions from the State of Pennsylvania's Securities Regulators for State law securities violations.

J.     Paying $1,250.00 per month for "rent" of a "corporate apartment" at 2224 Bahia Vista Street, Sarasota, FL 34239, which apartment is a condominium owned by

MALONEY FUST.  The apartment rent is "above market" and the apartment serves no valid business purpose.  This arrangement was done solely because MALONEY FUST moved in with FUST.  These payments were neither disclosed to, nor approved by, the Independent Directors.

35.    Once this and other matters were brought to FUST's attention by the former CFO of SFHC, Robert Harmon, said CFO was discharged by FUST.  In his place, FUST retained LEE, a person for whom FUST failed to do a background check upon, who was sued for securities violations in conjunction with Gencor Industries, Inc. ("Gencor"), U.S. District Court, Middle District of Florida, Orlando Division, Case Nos. 99-106-CIV-ORL-19(B) consolidated with 99-165-CIV-ORL-18(B), 99-194, 99-236, 99-253, 99-266, 99-279, 99-364, and 99-410 (Consolidated Lee Securities Lawsuits"); which Consolidated Lee Securities Lawsuits resulted in a settlement and payment of attorneys' fees in excess of $560,000.00 to the Plaintiffs' Class Action attorneys.  In fact, Gencor filed for bankruptcy protection and was required to be delisted from the American Stock Exchange and had to re-audit their books for two (2) or three (3) full years of time for which LEE had been its Chief Financial Officer (CFO).   None of this information was disclosed to the Independent Directors who also are the sole members of the Audit Committee of the Company by LEE nor FUST, nor to the other shareholders of SFHC. The failure to disclose LEE's background is another material misrepresentation on the part of FUST, MALONEY FUST and DUPONT, the Inside Directors.

36.    Thereafter, on January 30, 2004, FUST, MALONEY FUST and DUPONT (the "Inside Directors") retained the law firm of Greenberg, Traurig to send a letter to BANNON and OTTO (the "Independent Directors") demanding their resignation from the Board, allegedly on the grounds that they were "not independent", allegedly because they had contact with Badolato

and Sargon. A copy of the January 30, 2004 correspondence is attached hereto and incorporated herein by reference as Exhibit "C".

37.    NASDAQ defines "independence" as one who has not been employed by the company or any parent or subsidiary at any time within the past three (3) years or who has a family member who has been employed as an executive officer of the company or any other parent or subsidiary at any time within the past three (3) years. In addition, a director is not "independent" if he or she or any family member has accepted more than $60,000.00 in payments from the company, a parent or subsidiary during the current fiscal year or any of the last three (3) fiscal years, subject to certain "exceptions", which exceptions included compensation for Board or Committee service. One is not independent if one is a partner in or a controlling shareholder or executive officer of a for-profit or non-for profit organization that had made payments to the company or who has received payments from the company in excess of five (5%) of the recipient's gross revenues or $200,000.00 for property or services during the current fiscal year, is part of an interlocking director relationship or as a partner of the company's outside auditor or was a partner or employee of the auditor who worked on the company's audit at any time during the past three (3) years. Neither BANNON nor OTTO have any of those conflicts and thus are "independent" for purposes of the NASDAQ definition of "independent director" under the revised NASDAQ rules.

38.    The obvious intention of the Inside Directors, Greenberg, Traurig and LEE was to attempt to remove the Independent Directors who also serve as the Audit Committee from bringing to the attention of the outside Auditor those matters which Sargon and Badolato had previously brought to the attention of the Inside Directors and the Company and were bringing to their attention (the Independent Directors), i.e. – the above-referenced matters referenced in

paragraphs 34A through J and paragraphs 35 and 36, all of which were breaches for fiduciary duty and self-dealing by FUST and the other Inside Directors, MALONEY FUST and DUPONT.

39.    On February 2, 2004, Mr. Otto responded to the January 30, 2004 correspondence via U.S. Mail and fax demanding copies of the Written Consents to elect to terminate the directorships of the Independent Directors. A copy of said correspondence is attached hereto and incorporated herein as Exhibit "D".

40.    On February 10, 2004, subsequent to receipt of Exhibit "A", the Independent Directors and Audit Committee members of SFHC scheduled a Special Board Meeting for February 13, 2004 at 7:00 p.m., EST. A copy of the letter dated February 10, 2004 and the attached Notice of Meeting for February 13, 2004 are attached hereto and incorporated herein by reference as Composite Exhibit "E".

41.    To date, according to OTTO, pursuant to SEC Regulation 14C, despite notification on January 30, 2004 from Greenberg, Traurig that Greenberg, Traurig represented shareholders "owning shares representing more than a majority of votes have acted" to remove the company's only Independent Directors, no Shareholder Consents were filed with the SEC pursuant to Regulation 14C, nor were same provided to the Independent Directors despite repeated requests for same by Independent Directors, BANNON and OTTO.

42.    Furthermore, on February 13, 2004, LEE the new CFO of the Company who had previously been a "Director of Finance" filed with the SEC the attached Information Statement which stated that as of February 10, 2004, "the requisite number of Written Consents to take the shareholder actions were executed on various dates and delivered to the Company by the consenting shareholders on February 10, 2004" to remove directors, BANNON and OTTO. This is inconsistent with the prior letter of January 30, 2004 stating that the consents had been

received prior to January 30, 2004.  A copy of the February 13, 2004 filed Information Statement is attached hereto and incorporated herein by reference as Composite Exhibit "F".

43.    To date, no Shareholder Consents have been filed with the SEC as required pursuant to Regulation 14C.  In fact, pursuant to attached Exhibit "F", it appears as if the Inside Directors improperly issued additional shares and/or improperly issued options without the consent of the full Board and/or without calling proper Board Meetings so as to attempt to obtain the necessary consents of the "majority of shares" to oust the Independent Directors.  The Inside Directors illegally did so solely in order to retain "majority control" for the sole purpose of getting rid of the Independent Directors and members of the Audit Committee – who are in the midst of investigating improprieties, acts of self-dealing, alleged violations of the Sarbanes-Oxley Act, and other SEC violations and improprieties such as violations of the APA, failure to turnover the foreign patents and other fraudulent misrepresentations by the Inside Directors, including Chairman and CEO, FUST.

44.    Rather than disclosing this adverse information to the shareholders, the public and the SEC, the above-referenced Defendants actively concealed same and directed accounting manipulations and improprieties that were intended to mask these severe problems.

45.    These Defendants made these materially false misleading statements, and while doing, upon information and belief, issued inappropriate options to themselves and others without disclosing the material adverse facts about SFHC and its business which were known to them and only to them.

46.    The financial statements and the materials provided to the public, to the shareholder and to the SEC do not properly reflect the company's true financial condition, do not reflect that the foreign patents are not held by SF Asia and SF Europe and do not reflect a fair

statement of the interim reporting periods of January 1 through September 30, 1993. See the 10Q, a copy of which is attached hereto and incorporated herein by reference as Exhibit "G". Furthermore, during the Class Period, Defendants failed to file financial statements which conform to GAAP such that the financial statements will be presumably misleading and inaccurate pursuant to Regulation S-X, 17 CFR 210.0401(A)(1).

47.     As a result of accounting irregularities and other misstatements, the companies reported financial results (and the individual Defendants) also violated at least the following provisions of GAAP for which each Defendant is necessarily responsible:

A.     The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1, paragraph 34);

B.     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and affects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, paragraph 40);

C.     **The principle that financial reporting should provide information about how management of an enterprise discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.** To the extent that **management** offers securities of the enterprise to the public, it **voluntarily accepts wider responsibilities for accountability to prospective investors and the public in general** (FASB Statement of Concepts No. 1, paragraph 50) [Emphasis added];

D.     The principle that financial reporting should provide information about an enterprise's financial performance during a period. Investors and creditors often use information

about the past to help and assessing the prospects of an enterprise. Thus, although credit and investment decisions reflect investors' expectations about future enterprise performance, those expectations were commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, paragraph 42);

E.    The principle that **financial reporting should be reliable in that it represents what it purports to represent. That information should be reliable** as well as relevant to a notion that is central to accounting (FASB Statement of Concepts No. 2, paragraphs 58-59) [Emphasis added];

F.    **The principle of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions** (FASB Statement of Concepts No. 2, paragraph 79) [Emphasis added]; and

G.    The principle that conservatism be used as a prudent reaction uncertainty to try to ensure that certainties and risks inherent in business situations are adequately considered. **The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent** (FASB Statement of Concepts No. 2, paragraphs 95 and 97) [Emphasis added].

48.    Defendants' false representations and material omissions were made with scienter in that:

A.    The individual Inside Directors, including FUST, MALONEY FUST, DUPONT, as well as LEE directed that the company conceal from shareholders, the market and the SEC the above-referenced self-dealing by the Inside Directors set forth in paragraphs 34A through J, and paragraphs 35 and 36, the improper issuance of options and/or shares in order to

attempt to oust the Independent Directors in or about the end of January and/or the beginning of February, 2004 in conjunction with the filing of the 14C on February 13, 2004 and the misleading statements issued to the public and the false financial information filed in the 10Q on November 15, 2003 for the financial reporting period through September 30, 2003. See also the 10Q, Exhibit "G".

49.     All conditions precedent to the bringing of this action have been performed, have been waived, have occurred and/or have been excused.

**COUNT I**

**VIOLATION OF SECTION 10(B) OF THE SECURITIES
EXCHANGE ACT AND RULE 10(B-5) THEREUNDER**

50.     Lead Plaintiffs repeat and reallege paragraphs 1 through 49 above and paragraphs 70 through 72 below as if fully set forth herein.

51.     Throughout the Class Period, the Inside Directors singularly and in concert directly or indirectly engaged in the common plans, scheme and course of conduct described above and herein, pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices and the course of business which operated as a fraud upon Lead Plaintiffs and the other members of the Class, made various false statements of material facts and/or omitted to state material facts to make the statements made appear not misleading to Lead Plaintiffs and the other members of the Class; and employed manipulative and/or deceptive devices and contrivances in connection with the purchase and sale of SFHC common stock.

52      The purpose and affect of the Inside Directors' plan, scheme and course of conduct was to prevent the Independent Directors who were also the sole members of the Audit Committee, the remaining shareholders and the public from finding out about the related party

transactions of the Inside Directors set forth in paragraphs 34A through J, including but not limited to the following:

A.    FUST purchasing of the engagement ring for MALONEY FUST;

B.    The related party transaction with regard to the lease of SFHC's office space from the corporation owned by Inside Directors FUST and DUPONT;

C.    The utilization of approximately $300,000.00 of SFHC funds to register, file and license patents internationally which were to benefit SF Asia and SF Europe, without turning over the patents to those entities, in violation of the APA;

D.    Misrepresenting the status of the patents for SF Asia and SF Europe to the public and the use of SFHC's funds for said purpose;

E.    Violation of the Indemnification Agreement as part of the APA and expending approximately $100,000.00 of SFHC's funds to resolve two (2) litigations and/or threatened litigation matters which should have been paid by SF Labs for the APA;

F.    Entering into a related party transaction with MALONEY FUST for an advantageous salary and options of more than $300,000.00 when she had no qualifications in the field, no prior relevant experience and no college degree without outside director and/or Audit Committee approval;

G.    Payment for the Ft. Lauderdale lease and covering up same for an operation that created sanctions in the State of Pennsylvania Securities regulators for State securities law violations which had previously raised money for SF Labs through the sale of unregistered securities with unlicensed agents, again without Independent Director review and approval;

)                              )

H.     Payment for the MALONEY FUST condominium in Sarasota, Florida as a "business apartment" for $1,250.00 per month, at an "above market" price, solely because MALONEY FUST moved in with FUST, without Independent Director knowledge, consent and approval.

I.     Attempting to maneuver the removal of Independent Directors BANNON and OTTO, the sole members of the Audit Committee for attempting to investigate the above-referenced allegations of items A-H above and seeking their ouster for properly investigating these matters pursuant to Section 301 of Sarbanes-Oxley and Section 10(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(f).  When the Independent Directors who were the sole members of the Audit Committee attempted to schedule a meeting of the Board of Directors so as to investigate the matters sent to them by shareholders in the February 9, 2004 correspondence (Exhibit "A" hereto) and which they previously communicated to the Inside Directors, the Inside Directors conspired to try to oust the Independent Directors from the Board by asserting that "a majority of the shareholders of the corporation had consented to their removal".  The Inside Directors then forwarded the alleged notification of their removal pursuant to Rule 14C of the Act to the SEC.  This was signed by LEE; however, upon information and belief, the Inside Directors knew and LEE knew that a majority of the shareholders of the Company did not consent to the removal of the Independent Directors and the sole members of the Audit Committee, and if they did consent, they did not do so without full knowledge of the facts set forth above in paragraphs 34A through J and 35 and 36 above.

53.    Upon information and belief, in attempting to solicit consents for the removal of Independent Directors, BANNON and OTTO, the Inside Directors and LEE failed to disclose to

the independent shareholders the facts set forth above in paragraph 34A through J and paragraphs 35, 36 and 52 and in the letter of February 9, 2004.

54.    The purpose and intent of the Inside Directors and LEE's plan, scheme and course of conduct was to keep them in place and maintain their position of control of SFHC. The Inside Directors, FUST, MALONEY FUST, DUPONT, and LEE had actual knowledge of the material omissions and/or the falsity of the material statements set forth above (in paragraphs 34-36 and 52), and intended to deceive the Lead Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made to the shareholders, to the public, to the SEC, to the Lead Plaintiffs and to the other members of the Class.

55.    Furthermore, when the 10Q was filed on November 15, 2003, none of the above-referenced information was included in same, nor that LEE had been sued previously for violations of Federal Securities laws and that two (2) and/or three (3) prior years of audits he had prepared for Gencor had to be redone and restated by auditors and that the company he worked for, Gencor, filed bankruptcy. LEE, and the Inside Directors, knew or should have known of these material omissions and/or the falsity of these material statements and acted with reckless disregard for the truth when it failed or refused to ascertain and disclose these true facts to the SEC, Lead Plaintiffs and other members of the Class. LEE signed the 14C on February 13, 2004.

56.    The above facts alleged herein provide a strong inference that the Defendants made material false and misleading statements to the investing public with scienter in that the Defendants knew that the public statements issued or disseminated in the name of the Company were material, false and misleading. The Inside Director and LEE recklessly and with disregard

of the truth of such statements assisted in the issuance and dissemination of the 10Q to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violators of the Federal Securities laws.

57.    The undisclosed adverse information set forth above is the type of information which, because of SEC regulations, regulations with the National Stock Exchanges and customary business practices, are expected by investors and securities analyst to be disclosed and are known by corporate officers and their legal and financial advisors to be the type of information which is expected to be and must be disclosed. For example:

A.    Under Item 303 of Regulation S-K, 17 C.F.R. § 229.303, et seq., promulgated by the SEC under the Exchange Act, there is a duty to disclose in periodic reports filed with the SEC, the existence of "known trends or any known demands, commitments, events or uncertainties" at SFHC that would "result in or that are reasonably likely" to have a material impact on the company's net sales, revenues, income from operations or liquidity, or cause previously reported financial results not necessarily indicative of future operating results. 17 C.F.R. § 229.303(a)(1)-(3) and Instruction 3. In addition to the periodic reports required under the Exchange Act, management of a public company has a duty promptly "to make full and prompt announcements of material facts regarding the company's financial condition". Release No. 34-8995 (October 15, 1970) 3 Fed. Sec. L. Rep. (CCH) ¶23, 120A, at 17,095, 17 C.F.R. § 241.8995. The SEC has repeatedly stated that the anti-fraud provisions of the federal securities laws, which are intended to ensure that the investing public is provided with "complete and accurate information about companies" whose securities are publicly traded," apply to all public statements by persons speaking on behalf of publicly traded companies "that can reasonably be expected to reach investors and the trading markets, whoever the intended primary audience."

)                                    )

Release No. 33-6504 (January 13, 1984) 3 Fed. Sec. L. Rep. (CCH) ¶23, 120B, at 17, 095-3, 17

C.F.R. §241.20560. The SEC has emphasized that "[i]nvestors have legitimate expectations that

public companies are making, and will continue to make, prompt disclosure of significant

corporate developments." Release No. 18271 (November 19, 1981) [1981-1982 Transfer

Binder] Fed.Sec.L.Rep. (CCH) ¶83,049, at 84,618.

      B.    Furthermore, the Company was required to file in the 10Q the material

events referenced above in Paragraphs 34 A through J, which the Company and the Inside

Directors failed to do.

      C.    Pursuant to Form 8-K on September 23, 2003 the Company disclosed that

Inside Director FUST would be the holder shortly thereafter of 4,346,400 shares of common

stock of the Company, among other securities.  However, Note 3 of the 14C filed on February

13, 2004 with the SEC under the heading "Security Ownership of Certain Beneficial Owners and

Management" states that FUST is the beneficial owner of 5,356,400 shares of common stock of

the Company, among other securities.  This is a change of FUST's beneficial ownership of

exactly 1 million shares of common stock in the Company, during which time Independent

Directors OTTO and BANNON remained on the Board.  At no time did OTTO nor BANNON

ever receive notice of a meeting of Directors of the Company or a request for their written

consents (as would be required since they are the only Independent Directors) to issue any

securities to FUST, much less 1 million additional securities to FUST.  Obviously, the issuance

of an additional 1 million of additional shares that FUST now claims to hold is material and is a

material omission since it amounts to more than 5% of the voting securities of the Company.

Additionally, FUST never filed a Form 3, 4 or 5 (or a Schedule 13D) disclosing when he

acquired the additional 1 million shares of common stock in the Company).

D.     The letter of February 9, 2004 (Exhibit "A" hereto) to the Company and its Directors lists material facts and/or omissions which clearly should have been reported to shareholders previously and to the SEC in either a material or periodic report.   Neither FUST nor the other Inside Directors can address the issues raised in the February 9, 2004 letter (Exhibit "A"), given the issues raised therein which are addressed towards their breaches of fiduciary duty and self-dealing, including their attempts to improperly remove Independent Directors OTTO and BANNON from the Board.   Furthermore, if any of the 1 million shares FUST voted were utilized to remove in the alleged majority consents to remove Independent Directors OTTO and BANNON from the Board, then the entire shareholder consent, if same even exits, may be void entirely.  Despite requests for the documents underlying the majority consents, OTTO and BANNON still have not received said documents from the Inside Directors.   Furthermore, on information and belief, the Plaintiffs believe that the solicitations from the Inside Directors occurred to obtain the majority consents without telling any of the parties who provided said consents about the material facts and/or omissions contained in the February 9,2004 letter (Exhibit "A") which Plaintiffs believe the Inside Directors had a duty to disclose—since the sole reason for the "majority consents" was to remove the sole Independent Directors who could properly investigate the allegations of the February 9, 2004 letter (Exhibit "A") which the Inside Directors did not want investigated in any event.   At the very least, Independent Directors OTTO and BANNON feel compelled to verify what the Company states in its 14C and to determine the appropriateness of the issuance of the extra 1 million shares to FUST, the majority consents and whether same exist, as well as the appropriateness of their termination, and the facts contained in the letter of February 9, 2004 (Exhibit "A").

)                              )

E.   In fact, since the Company is a Florida corporation, it is bound by Florida law as well as 10b-5, and Sarbanes Oxley, all of which preclude FUST and the Inside Directors from entering into private transactions between himself and the Company, except in specified circumstances, which are usually when a majority of the non-interested Directors approve of the transaction(s) in question.   In the matters set forth above in Paragraphs 34 A through J no such approval was sought nor given.   This is a direct violation of F.S. Section 607.0832 (1) (a) and (2).   Furthermore, pursuant to F.S. 607.0832 (1) and (2) in order to issue 1 million additional shares FUST needed the approval of the Independent Directors OTTO and BANNON –which he did not have, and pursuant to that same statute in order to engage in the actions set forth in Exhibit "A" the Inside Directors also needed the approval of the Independent Directors OTTO and BANNON –which they did not have, the Inside Directors then sought to get rid of the Independent Directors.   However, Independent Directors OTTO and BANNON believe that in order to attempt to do so, FUST and the other Inside Directors were required to disclose to the shareholders of the Company allegedly voting to remove OTTO and BANNON via written consent that (i) the apparent distribution to FUST of the extra 1 million shares was not authorized by the Independent Directors as is required by F.S. Section 607.0832 (1) and (2); and (ii) the allegations of breach of fiduciary duty and self-dealing raised against FUST and the other  Inside Directors in the February 9, 2004 letter (Exhibit "A"), all of which are material to any decision to vote on the removal of the Independent Directors.

58.   As a result of the foregoing, the market price of SFHC has been harmed during the Class Period.   In ignorance of the falsity of the reports and statements and the deceptive and manipulative devices and contrivances employed by the Defendants, Lead Plaintiffs and other members of the Class relied, to their damage, on the reports and statements described above

and/or in the integrity of the 10Q filed by the Inside Directors and the information provided by the Inside Directors during the Class Period in purchasing and acquiring and holding their stock at prices which were affected as a result of Defendants' false and misleading statements. Furthermore, to the extent that the Inside Directors have made private inside deals for themselves at the expense of the Company, monies need to be disgorged by the Inside Directors for the engagement ring, the Ft. Lauderdale and Sarasota leases, the contract with MALONEY FUST, the foreign patents need to be turned over, the lease payments for Ft. Lauderdale and Sarasota need to be returned, CFO LEE who was retained without a proper background investigation needs to be terminated and the Independent Directors need to be reinstated to their positions (although it is unclear if their termination was even proper in the first place).  Defendant, FUST sold stock during the Class Period in or about approximately February, 2003 without properly disclosing the facts set forth above.  Defendants' concealment of the material information set forth above served only to harm Lead Plaintiffs and the other members of the Class who owned SFHC securities in ignorance of the financial risks to them as a result of such non-disclosures. As a result of the wrongful conduct alleged herein, the Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

59. By reason of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Lead Plaintiffs and the other members of the Class for the substantial damages which they suffered in connection with their purchase of SFHC securities during the Class Period.

WHEREFORE, Lead Plaintiffs on behalf of themselves and the other members of the Class demand judgment against the Defendants as follows:

A.     Determining that this action is properly maintainable as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Certifying Lead Plaintiffs as the Class Representative and their counsel as Class Counsel;

C.     Declaring and determining that that the Defendants violated the Federal Securities laws by reason of their conduct as alleged herein;

D.     Awarding monetary damages against all of the Defendants, jointly and severally, in favor of Lead Plaintiffs and the other members of the Class for all losses and damages suffered as a result of the acts and transactions complained of herein, including punitive damages where appropriate, together with prejudgment interest from the date of the wrongs to the date of the judgment herein;

E.     Awarding Lead Plaintiffs the costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees and expert fees; and

F.     Awarding Lead Plaintiffs and the other members of the Class such other and further relief as this Court may deem just and proper in light of the circumstances of this case.

**COUNT II**

**VIOLATIONS OF SECTION 20(a) OF THE
SECURITIES EXCHANGE ACT**

60.     Lead Plaintiffs repeat and reallege paragraphs 1 through 49, 52I, 54-57 above and 70-72 below as if fully set forth herein.

61.     During the Class Period, each of the Inside Directors and LEE, by virtue of them being officers and/or directors of and LEE being the Director of Finance of SFHC and thereafter

25

CFO and their specific acts set forth above were controlling persons of SFHC within the meaning of Section 20(a) of the Exchange Act.

62.     Each of the individual Defendants' positions made them privy to, and provided him or her with actual knowledge of, the materials facts which SFHC concealed from Lead Plaintiffs and the other members of the Class during the Class Period.

63.     Each of the individual Defendants had the power and influence, and exercised the same, to cause SFHC to engage in the unlawful conduct and practices complained of herein by causing SFHC to disseminate the false and misleading information referred to above.

64.     By virtue of the foregoing, the individual Defendants violated Section 20(a) of the Exchange Act.

65.     By virtue of the conduct alleged above, the Defendants are liable to the Lead Plaintiffs and the other members of the Class for the substantial damages which they suffered in connection with their purchase of SFHC common stock during the Class Period.

WHEREFORE, Lead Plaintiffs on behalf of themselves and the other members of the Class demand judgment against the Defendants as follows:

A.     Determining that this action is properly maintainable as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Certifying Lead Plaintiffs as the Class Representative and their counsel as Class Counsel;

C.     Declaring and determining that that the Defendants violated the Federal Securities laws by reason of their conduct as alleged herein;

D.     Awarding monetary damages against all of the Defendants, jointly and severally, in favor of Lead Plaintiffs and the other members of the Class for all losses and

LAW OFFICES OF DAVID B. HABER, P.A.

)                                              )

damages suffered as a result of the acts and transactions complained of herein, including punitive

damages where appropriate, together with prejudgment interest from the date of the wrongs to

the date of the judgment herein;

      E.    Awarding Lead Plaintiffs the costs, expenses, and disbursements incurred

in this action, including reasonable attorneys' fees and expert fees; and

      F.    Awarding Lead Plaintiffs and the other members of the Class such other

and further relief as this Court may deem just and proper in light of the circumstances of this

case.

## BREACH OF FIDUCIARY DUTY

66.    Lead Plaintiffs repeat and reallege paragraphs 1 through 49, and 57 above and 70-

72 below as if fully set forth herein.

67.    Defendants, Inside Directors, FUST, MALONEY FUST and DUPONT, had a

fiduciary duty to the Lead Plaintiffs and to the other shareholders pursuant to Sarbanes-Oxley

and other SEC regulations and corporate laws to act in the best interest of the company and not

in their own self interest.  As officers and directors of SFHC, the Inside Directors owed a

fiduciary duty to the Lead Plaintiffs and the other shareholders of SFHC to act with fidelity and

the utmost care, to undertake to give the Company the benefit of their best care and judgment

and to exercise their powers in the best interests of the company and to its shareholders.

68.    The above-stated actions and/or omissions of the Inside Directors and Defendant,

LEE, the Director of Finance and then CFO constituted violations of their fiduciary duty to

SFHC and to the Lead Plaintiffs and the other shareholders of SFHC.  Said breaches of fiduciary

duty are unlawful acts which are unfairly prejudicial and damaging to the Lead Plaintiffs and the

remaining shareholders of SFHC, entitling the Lead Plaintiffs and the remaining shareholders to

)                                    )

equitable and legal relief, including disgorgement of all acts of self-dealing, compensatory damages against the Inside Directors and LEE, interests, costs and any other and further relief this Court deems just and proper.

WHEREFORE, Lead Plaintiffs on behalf of themselves and the other members of the Class demand judgment against the Defendants as follows:

A.    Determining that this action is properly maintainable as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Certifying Lead Plaintiffs as the Class Representative and their counsel as Class Counsel;

C.    Declaring and determining that that the Defendants violated the Federal Securities laws by reason of their conduct as alleged herein;

D.    Awarding monetary damages against all of the Defendants, jointly and severally, in favor of Lead Plaintiffs and the other members of the Class for all losses and damages suffered as a result of the acts and transactions complained of herein, including punitive damages where appropriate, together with prejudgment interest from the date of the wrongs to the date of the judgment herein;

E.    Awarding Lead Plaintiffs the costs, expenses, and disbursements incurred in this action, including reasonable attorneys' fees and expert fees; and

F.    Awarding Lead Plaintiffs and the other members of the Class such other and further relief as this Court may deem just and proper in light of the circumstances of this case.

LAW OFFICES OF DAVID B. HABER, P.A.

## COUNT IV

### UNAUTHORIZED TRANSACTIONS, RESCISSION

69.    Lead Plaintiffs repeat and reallege paragraphs 1 through 49 and 57 above as if fully set forth herein.

70.    Pursuant to the new Sarbanes-Oxley Act, specifically Section 301, Section 10(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(f) as amended, auditors and Audit Committees are to be independent and are to establish procedures for unanimous submissions by employees concerning questionable accounting or auditing matters.  Each Audit Committee has the authority to engage independent counsel and other advisors to carry out its duties.  It is clear that the Inside Directors attempted to undermine the Sarbanes-Oxley Act, specifically Section 301, by preventing the Independent Directors and sole Audit Committee Members (BANNON and OTTO) from fulfilling their duties in investigating the matters as set forth in Exhibit "A", by preventing the Board of Directors Meeting of February 13, 2004 from going forward, by attempting to terminate their independent directorships and by otherwise attempting to improperly issue options and other shares of the Company in favor of the Inside Directors and/or third parties under their control so as to obtain a "majority of shareholder consent" in favor of terminating the Independent Directors and sole members of the Audit Committee.

71.    The sole purpose of this was to get rid of the Independent Directors who were properly investigating the complaints pursuant to Section 301(4) of the Sarbanes-Oxley Act.

72.    Pursuant to the Sarbanes-Oxley, the Inside Directors no longer have the ability to vote on matters of self-dealing, such as leases to their own corporation for the corporate offices, paying rent on the Ft. Lauderdale space and the lease of MALONEY FUST's condominium in Sarasota, Florida, purchasing the engagement ring for MALONEY FUST, paying $300,000.00

)                                      )

for the licensing and registration of the international patents which are still in the name of FUST rather than SF Asia and SF Europe as required by the APA and the other matters set forth above. The Inside Directors have entered into unauthorized transactions for which the Independent Directors sought to investigate and which the Inside Directors and LEE through their actions have attempted to prevent.

73.    The Lead Plaintiffs on behalf of themselves and the other shareholders of SFHC believe the above-referenced transactions are void and should be set aside and rescinded pursuant to Sarbanes-Oxley as being inappropriate and illegal since they were not approved by the Independent Directors and/or with the knowledge of the Independent Directors at the time they occurred.

74.    As a result, the Lead Plaintiffs on behalf of themselves and the shareholders of SFHC upon legal and equitable grounds are entitled to rescind the transactions set forth above and are entitled for the Inside Directors to disgorge those funds and those transactions referenced above for the benefit of SFHC if same are not approved by the Independent Directors without the influence of the Inside Directors, since they are all acts of self-dealing.

WHEREFORE, the Lead Plaintiffs seek to rescind and void the transactions set forth in paragraphs 34A through J above as acts of self-dealing to have the Inside Directors disgorge those funds, and to seek attorneys' fees for having to bring this action and any interests, costs and other and further relief this Court deems just and proper.

## COUNT V

## ACCOUNTING AND CONSTRUCTIVE TRUST

75.    Lead Plaintiffs repeat and reallege paragraphs 1 through 49, 57 and 70 through 72 above as if fully set forth herein.

76.     The Lead Plaintiffs are shareholders of SFHC.

77.     On behalf of themselves and the other shareholders of SFHC, the Lead Plaintiffs seek a full accounting of the Inside Directors' financial management of SFHC and an Order requiring them to repay funds improperly diverted from SFHC to the Company for all matters of self-dealing as set forth in paragraphs 34A through I and 52.

WHEREFORE, the Lead Plaintiffs, on behalf of themselves and the other shareholders of SFHC, request that this Court enter judgment individually against the Inside Directors and LEE as follows:

A.     Enter an Order requiring the Lead Plaintiffs to account for and repay to the Company all compensation benefits, stock or other business assets diverted from the Company which have not been approved by Independent Directors and/or shareholders;

B.     A declaratory judgment declaring that the options and shares improperly issued by the Inside Directors and LEE as set forth in the February 13, 2004 14C be done without Independent Director approval and that same are void and/or of no affect;

C.     Declaring that the Independent Directors pursuant to Sarbanes-Oxley have proper standing to appoint independent counsel to further investigate any necessary claims without fear of retaliation pursuant to Section 806 of the Sarbanes-Oxley Act,

D.     An award of damages against the Inside Directors for the monies improperly taken for actions of self-dealing;

E.     An award of attorneys' fees and costs for counsel for the Lead Plaintiffs;

F.     An award of any other further relief this Court deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Lead Plaintiffs demand a jury trial for all issues so triable.

**DATED** this 3ʳᵈ day of March, 2004.

Respectfully submitted,

**DAVID B. HABER, P.A.**
Attorneys for Lead Plaintiffs
One S.E. Third Avenue, Suite 1820
Miami, Florida 33131
Tel: (305) 379-2400
Fax: (305) 379-1106

By: _____
DAVID B. HABER, ESQ.
Florida Bar No.: 435368

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Complaint was delivered via facsimile and U.S. Mail to all parties listed on the attached Service List, this 3ᵗᵈ day of March, 2004.

By: _____
DAVID B. HABER, ESQ.

I:\clients-all\3495-Badolato\Pleadings\AMComplaint - Fust, et. al..doc

## SERVICE LIST

Mr. Charles Fust
Chairman and CEO
Sino Fresh Healthcare, Inc.
516 Paul Morris Drive
Englewood, FL 34223

Ms. Stacey Maloney Fust
Sino Fresh Healthcare, Inc.
516 Paul Morris Drive
Englewood, FL 34223

Mr. Robert DuPont
Sino Fresh Healthcare, Inc.
516 Paul Morris Drive
Englewood, FL 34223

Mr. Russell R. Lee, III
Sino Fresh Healthcare, Inc.
516 Paul Morris Drive
Englewood, FL 34223

Sino Fresh Healthcare, Inc.
516 Paul Morris Drive
Englewood, FL 34223